IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                       No. 18-130 PO

JHONATHAN JOSE ROJAS-MARCANO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Jhonathan Rojas-Marcano's Motion to Dismiss Complaint [Doc. 9], filed on February 5, 2018. The United States responded on February 7, 2018. [Doc. 12]. Defendant did not reply. The Court heard argument from the parties at a hearing on the motion on February 21, 2018. The Court has considered the briefing, oral argument, relevant portions of the record, and relevant authorities. Being otherwise fully advised in the premises, the Court finds that Defendant's Motion to Dismiss Complaint is not well-taken and will be DENIED.

## Background

Defendant was charged by Complaint with Entry Without Inspection, in violation of 8 U.S.C. § 1325(a)(1). [Doc. 1]. According to the Complaint, on January 12, 2018, U.S. Border Patrol agents encountered Defendant in Luna County, New Mexico. *Id.* at 1. The Complaint states that Defendant admitted he was a citizen of Venezuela and had crossed the United States/Mexico International Boundary on January 12, 2018, at a place not designated as a legal International Port of Entry. *Id.* The Complaint further states, "There is no evidence to

indicate that the defendant has applied for permission from the appropriate authority to enter or remain in the United States legally." *Id.*

Defendant filed the instant motion to dismiss the Complaint with prejudice. [Doc. 9]. Defendant contends that he left Venezuela "because of the threats of violence and insecurity he experienced in his country, as well as his inability to meet his daily subsistence needs there."[1] *Id.* at 1. He states that he entered the United States on January 12, 2018, to seek asylum. *Id.* Defendant argues that Article 31 of the Convention Relating to the Status of Refugees ("Refugee Treaty"), which prohibits states from penalizing refugees on the basis of their illegal entry or status, provides an affirmative defense to his criminal charge and warrants dismissal of the Complaint. [Doc. 9] at 2–3. Defendant maintains that, as a refugee seeking asylum in the United States, he is deserving of the protections of Article 31. *Id.* at 3–4.

The government opposes the motion on two fronts. [Doc. 12]. It argues as an initial matter that the Refugee Treaty is not binding domestic law and therefore it "confers no rights upon Defendant." *Id.* at 4–5. Second, the government argues that, even if the protections of Article 31 were legally enforceable, Defendant still would not be entitled to rely on them because he does not satisfy all of the requirements of Article 31. *Id.* at 5–7. Namely, the government argues that Article 31 requires that the alien seeking asylum "must have come to the United States directly from a territory where his life or freedom was threatened" and "must present himself without delay to the authorities." *Id.* at 6. The government maintains that Defendant satisfies neither of these requirements.

---

[1] Defendant attaches to his motion several news articles detailing the "massive political and economic upheaval" underway in Venezuela. *See* [Doc. 9-1] at 2–15.

## Analysis

The United Nations Convention Relating to the Status of Refugees ("Refugee Treaty") provides certain protections for refugees seeking asylum. Refugee Treaty, July 28, 1951, 189 U.N.T.S. 150. Although the United States is not a signatory to the Refugee Treaty, it is bound to comply with it pursuant to its accession to the United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223 ("Protocol"). *See INS v. Stevic*, 467 U.S. 407, 416 (1984).

Article 31 of the Refugee Treaty provides as follows:

> Refugees unlawfully in the Country of Refuge
>
> 1. The Contracting States shall not impose penalties, on account of their illegal entry or presence, on refugees who, coming directly from a territory where their life or freedom was threatened in the sense of article 1, enter or are present in their territory without authorization, provided they present themselves without delay to the authorities and show good cause for their illegal entry or presence.

As another court has summarized the provision, "[i]nversely paraphrased, contracting states are free to prosecute when refugees illegally enter either from a country in which they have settled following their exodus from the country of persecution, or when they fail to immediately notify authorities that they are seeking asylum and explain their illicit entry." *United States v. Malenge*, 472 F. Supp. 2d 269, 273 (N.D.N.Y. 2007). In short, by its plain text, Article 31 applies only when the following conditions have been satisfied: (1) the party seeking relief is a "refugee"; (2) the refugee came to the United States directly from the territory from which he fled; (3) the refugee presented himself without delay to the authorities; and (4) the refugee has good cause for his unlawful entry or presence.

3

The parties dispute both whether the Refugee Treaty and Protocol create enforceable rights on which Defendant may rely and whether, assuming they do, Article 31 applies to the facts and circumstances of this case. The Court need not decide whether the Refugee Treaty and Protocol create enforceable rights because, even assuming they do,[2] the Court finds that Defendant cannot rely on the protections of Article 31. Therefore, the prosecution of Defendant for Entry Without Inspection, pursuant to 8 U.S.C. § 1325(a)(1), does not violate the treaty obligations of the United States.

As the government has pointed out, Defendant fails to satisfy two of the requirements of Article 31. First, Defendant did not come to the United States directly from Venezuela, i.e., the territory from which he fled. Rather, he entered the United States from Mexico. Defendant's briefing does not address this point, and counsel for Defendant conceded during oral argument that Defendant did not enter directly from Venezuela.[3] Second, Defendant did not present himself "without delay" to the authorities upon entering the United States. According to the government, Defendant and two other undocumented persons were attempting to conceal themselves under some brush when the agents found them. [Doc. 12] at 1. Following his arrest,

---

[2] Several courts to decide the issue have found that the provisions of the Refugee Treaty are not binding on the courts. *See, e.g.*, *United States v. Malenge*, 294 F. App'x 642, 644 (2d Cir. 2008); *Haitian Refugee Ctr., Inc. v. Baker*, 949 F.2d 1109, 1110 (11th Cir. 1991); *United States v. Munoz*, 2017 WL 4922047, at *4 (D. Ariz. Oct. 30, 2017). They have concluded that the Protocol is not a self-executing treaty; therefore, the provisions of the Refugee Treaty do not become "a source of rights under our law unless and until Congress implement[s] them by appropriate legislation." *Malenge*, 294 F. App'x at 644 (internal quotation marks omitted). Because the Refugee Treaty is not binding on the courts, a criminal defendant cannot rely on it to avoid prosecution for his illegal entry or presence in the United States. As described *supra*, however, the Court need not decide this issue to resolve the instant motion.

[3] During oral argument, counsel for Defendant pointed out that Defendant could not have entered the United States directly from Venezuela without a visa, which he could not obtain. Counsel suggested that the Court overlook the technicalities of this requirement because Defendant essentially did his best to comply with the requirement. The Court declines to overlook this deficiency. And, even if the Court were to find that Defendant had entered the United States directly, Defendant still cannot satisfy the additional requirement that he present himself without delay to the authorities, as discussed *infra*.

Defendant told the agents that he had entered the United States to seek employment in Seattle, Washington. *Id.* at 2. Defendant then stated that he feared returning to Venezuela because of the gang violence there. *Id.* His arrest records confirm that he claimed "Credible Fear due to the gang violence in Venezuela." [Doc. 9-1] at 18. Although Defendant's statements to the agents indicate that he is seeking asylum in the United States, he made such claim only *after* he was stopped and arrested by Border Patrol agents. He did not present himself "without delay" to the authorities. His counsel did not argue this point in the briefing or during oral argument.

Ultimately, Defendant has not alleged any set of factual circumstances under which the Refugee Treaty would apply to his case, nor has he cited any case law to support his position on this front. The government, meanwhile, has directed the Court to persuasive authority from the Northern District of New York considering similar circumstances and reaching the outcome the government urges here. *See Malenge*, 472 F. Supp. 2d. at 273 (finding that Refugee Treaty did not preclude the defendant's prosecution for using a false passport, because the defendant "did not immediately notify authorities that she was seeking asylum" and "arguably" had settled in an intermediary country (Canada) before seeking entry to the United States); *see also United States v. Barry*, 500 F. Supp. 2d 125, 127 (N.D.N.Y. 2007) ("Because the facts . . . indicate that Defendant committed criminal acts upon her attempted entry into the country and divulged her intention to seek asylum only after her repeated unsuccessful attempts to avoid detection clearly proved fruitless, the Government has a legitimate basis to proceed with the prosecution.").[4]

---

[4] During oral argument, counsel for Defendant suggested that *Malenge* is distinguishable because the defendant in that case was being prosecuted for misuse of a passport, which is not expressly contemplated by Article 31. Even so, the rationale of the court—that a defendant who does not immediately alert the authorities that he is seeking asylum and who passes through an intermediary country before seeking entry is not entitled to the protections of Article 31—is equally applicable here. *See Malenge*, 472 F. Supp. 2d at 273. The Court finds the reasoning of

The Court recognizes the practical challenges of satisfying the requirements of Article 31, but it cannot ignore them. Defendant has not presented any credible argument as to why or how he satisfies the requirements of Article 31, and thus why he is entitled its protections. Defendant may seek asylum in the United States and, as his counsel acknowledged during oral argument, the continued prosecution of his criminal case is not an obstacle thereto. Defendant's motion will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion to Dismiss Complaint [Doc. 9] is **DENIED**.

**IT IS SO ORDERED**.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

---

*Malenge* and *Barry*, which relied in large part on *Malenge*, persuasive, particularly in the absence of any countervailing law by Defendant.